RENDERED: JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0432-MR

TERRELL TYRONE CLARK	APPELLANT


v.	APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOHN GRISE, JUDGE
ACTION NO. 20-CR-00170


COMMONWEALTH OF KENTUCKY	APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, A. JONES, AND MOYNAHAN, JUDGES.

JONES, A., JUDGE: Terrell Tyrone Clark appeals from a March 3, 2025, order of

the Warren Circuit Court summarily denying his Kentucky Rule of Criminal

Procedure (RCr) 11.42 motion to vacate his guilty plea and consequent sentence of

imprisonment. We affirm.

# I. BACKGROUND

At approximately 5:30 a.m. on December 25, 2019, deputies responded to a report of a stabbing at an apartment on East Heights Avenue in Bowling Green. Upon arriving at the apartment complex, a deputy encountered a naked black male, later identified as Clark, standing in a grassy area. Clark was visibly injured and covered in blood. He was screaming loudly, behaving erratically, and appeared highly agitated. As Clark began walking away from one of the deputies, he repeatedly shouted that he wanted the deputies to shoot someone. He then stated that he was going to kill himself, formed his hand into the shape of a gun, pointed it first toward an unidentified object and then toward his own head, and repeatedly yelled, "bang." When a deputy asked Clark what had happened, Clark responded that the deputy would need to ask Jesus because Jesus knew. The deputy then escorted Clark to an ambulance, and he was transported to a hospital for treatment.

The deputies subsequently interviewed Jeffery Lay and Teri Fulcher, the residents of the apartment where the stabbing occurred. They reported that, earlier that morning, someone knocked on their door. When Fulcher opened it, an unknown, naked black man, later identified as Clark, forced his way inside and began striking her in the face. Fulcher, who was visibly upset during the interview, stated that she feared Clark intended to sexually assault her because he was naked.

Lay, who had been in the rear of the apartment, came forward after hearing the disturbance to defend Fulcher. As he approached, Clark made a comment to the effect that "something is about to happen" and then struck Lay in the face. Lay used a pocketknife to defend himself and Fulcher. After Lay stabbed Clark several times, Clark fled the apartment. Lay later observed Clark throwing objects at the window of a different apartment unit. The deputies photographed blood on the living room floor, a Christmas present, and Lay's clothing and arms. They also collected Lay's clothing and the knife as evidence.

The deputies next interviewed Isaiah Myles and Vonqueshia Gatewood, who resided in the apartment unit Lay had identified as the one at which Clark was throwing objects. Clark also resided in that apartment with Myles and Gatewood. Gatewood stated that earlier that morning Clark had poured salsa on the floor and damaged the back door of the apartment. Later, while she and Myles were asleep, she heard what she initially believed to be a car alarm. She soon discovered, however, that the noise was Clark repeatedly sounding the horn of his vehicle. Myles and Gatewood further stated that they were later awakened by several loud bangs at their front door. When Myles went to investigate, he encountered Clark, who was naked, covered in blood, and speaking nonsensically. Myles followed Clark, but when Clark suddenly advanced toward him in an aggressive manner, he kicked Clark to keep him away.

Based on the above, Clark was indicted on February 5, 2020, for Assault First Degree, a Class B felony for which imprisonment ranges from ten to twenty years[1] (for his alleged attack on Fulcher); Assault Fourth Degree[2] (for his alleged attack on Lay); Burglary First Degree, a Class B felony[3] (for his alleged forced entry into Lay and Fulcher's apartment and ensuing assaults); Indecent Exposure Second Degree;[4] Menacing;[5] Disorderly Conduct Second Degree;[6] and Public Intoxication.[7] If tried and convicted of those charges, Clark could have been sentenced to prison for as long as forty-five years[8] and, considering his Assault First Degree and Burglary First Degree charges, would have been deemed a violent offender[9] with very limited parole eligibility.[10]

---

[1] *See* Kentucky Revised Statute (KRS) 508.010; KRS 532.060(2)(b).

[2] KRS 508.030.

[3] KRS 511.020.

[4] KRS 510.150.

[5] KRS 508.050.

[6] KRS 525.060.

[7] KRS 525.100.

[8] Clark acknowledged this point in his *Alford* plea.

[9] *See* KRS 439.3401(1)(b)1. & 7.

[10] *See* KRS 439.3401(4).

However, on April 15, 2021, Clark accepted the Commonwealth's plea offer and entered an *Alford*[11] plea to the amended charges of second-degree assault and second-degree burglary, both Class C felonies.[12]  The Commonwealth recommended a total sentence of fifteen years' imprisonment, consisting of consecutive sentences of ten years for the amended charges of second-degree assault and five years for second-degree burglary, and opposed probation. Notably, the version of KRS 439.3401 in effect at the time did not classify either amended offense as a violent offense requiring enhanced parole eligibility restrictions.

Before accepting Clark's plea, the circuit court conducted a *Boykin* colloquy.[13]  In response to the circuit court's questions, Clark affirmed the terms of the plea agreement and his understanding of the rights he was waiving by entering the plea.  After Clark waived preparation of a presentence investigation report, the circuit court entered judgment in accordance with the plea agreement.

---

[11] *North Carolina v. Alford*, 400 U.S. 24 (1970).

[12] *See* KRS 508.020 and KRS 511.030.

[13] Due process requires a trial court to make an affirmative showing, on the record, that a guilty plea is voluntary and intelligent before it may be accepted.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  The purpose of this showing is "to make sure [the defendant] has a full understanding of what the plea connotes and of its consequence[,]" including the constitutional rights that are waived by a guilty plea.  *Id*. at 243-44.

In April 2024, Clark then sought an evidentiary hearing and relief from his conviction pursuant to RCr 11.42.  The trial court summarily denied his motion.  This appeal followed.

## II. STANDARD OF REVIEW

In a motion brought under RCr 11.42, "[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009) (citation omitted).  A successful petition for relief under RCr 11.42 for ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord Gall v. Commonwealth*, 702 S.W.2d 37, 39-40 (Ky. 1985).

Regarding the first of those two prongs, "[a] deficient performance contains errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (internal quotation marks and citation omitted).  Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

-6-

circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). As further stated in *Strickland*, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

As to the second *Strickland* prong, the movant must show a "reasonable probability" that the outcome of the proceeding would have been different, but for his counsel's deficient performance. *Bowling v. Commonwealth*, 981 S.W.2d 545, 551 (Ky. 1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014) (citation omitted). To establish prejudice in the context of a guilty plea, as here, the movant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012) (internal quotation marks and citations omitted). To elaborate:

> [A]t the pleading stage it is movant's burden to allege specific facts which, if true, would demonstrate prejudice. A conclusory allegation to the effect that absent the error the movant would have insisted upon a trial is not enough. The movant must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational, *e.g.*, valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence.

*Id.* (footnote and citation omitted).

"In reviewing an RCr 11.42 proceeding, the appellate court reviews the trial court's factual findings for clear error while reviewing the application of its legal standards and precedents de novo." *Ford v. Commonwealth*, 628 S.W.3d 147, 156 (Ky. 2021) (citation omitted). "If an evidentiary hearing is not held, as is the present case, our review is limited to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Smith v. Commonwealth*, 438 S.W.3d 392, 394 (Ky. App. 2014) (internal quotation marks and citation omitted).

### III. ANALYSIS

On appeal, Clark first argues that, prior to accepting the Commonwealth's plea offer, trial counsel failed to provide him with or review discovery materials with him and that, had he been afforded the opportunity to review the discovery, he would not have entered a guilty plea. However, the circuit court properly rejected this claim because it amounts to nothing more than a conclusory allegation. *See Stiger*, 381 S.W.3d at 237; RCr 11.42(2). As the circuit court explained in its dispositive order, "[e]ven if it were error for trial counsel not to review the discovery tapes with the defendant, the defendant does not identify what content, and how that content, would support a conclusion that the

-8-

defendant's decision to reject the plea bargain and go to trial would have been rational."

Next, Clark argues that during his *Boykin* colloquy, he informed the circuit court that he felt "forced into this plea deal, not by the judge, but by the racist criminal justice system that has been unfavorable towards African Americans." Appellant's Brief at 3. Clark asserts the circuit court accordingly should have granted his RCr 11.42 motion. However, the circuit court properly rejected this argument pursuant to RCr 11.42(2). Its explanation, which we adopt, was as follows:

> Just like during the plea colloquy, the defendant does not make any assertions that his plea was induced by trial counsel's or a state actor's threats, misrepresentations, or improper promises. Thus, to the extent that the defendant views his plea as being motivated by "a racist criminal justice system," or the lack of review of the discovery DVDs, that motivation alone is not one that renders his plea involuntary. But furthermore, the record does not reflect that the defendant, despite his belief about the criminal justice system, "did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty." [*Brady v. United States*, 397 U.S. 742, 750 (1970)]. None of the defendant's assertions, even if taken as true, negate the voluntariness of his <u>Alford</u> plea.

Next, Clark argues that trial counsel rendered ineffective assistance by failing to present mitigating evidence of mental illness. Specifically, he contends that "[i]f the allegations by Teri Fulcher, Jeffery Lay, and the Warren County

Sheriffs [sic] Department are accurate, there has to be a [sic] some form of explanation for why Appellant would enter a complete stranger's home while completely naked." Appellant's Brief at 4.

To the extent Clark is arguing his alleged offenses *might* have been the product of mental illness, such speculative claims, *i.e.*, "claim[s] that certain facts might be true . . . cannot be the basis for RCr 11.42 relief." *Mills v. Commonwealth*, 170 S.W.3d 310, 328 (Ky. 2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). Furthermore, RCr 11.42 motions are not vehicles for conducting further discovery or fishing expeditions. *Prescott v. Commonwealth*, 572 S.W.3d 913, 926 (Ky. App. 2019).

That aside, the circuit court did not address this argument, and Clark provides no indication of where or how he preserved it for review. Neither omission is surprising because our review of the record reveals that Clark never raised this claim below. In his unverified RCr 11.42 motion, Clark did not assert that mental illness may have caused him to commit the alleged offenses; indeed, he has consistently maintained his innocence. The closest he came to raising the issue was a single statement that "I have a documented mental illness that is characterized by indecisiveness at all times." Accordingly, we decline to address this argument further because "[o]ur jurisprudence will not permit an appellant to

-10-

feed one kettle of fish to the trial judge and another to the appellate court." *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017) (citation omitted).

Next, Clark asserts:

[I]t was in the interest of justice to ensure if Appellant truly felt forced into accepting a plea of guilty for crimes in [sic] which he did not commit. Coupled with the fact that Appellant suffered injuries (such as stab wounds) with no evidence that Appellant had actually assaulted Terri Fulcher as there were no form of markings on Appellants [sic] hands to asserts [sic] as much. Although, Jeffery Lay did have wounds on his hands. However, his statement is that he only engaged potentially lethal force by way of the pocket knife that he had just received as a Christmas gift. Appellant asserts that the Warren Circuit Court abused its discretion when it erroneously allowed Appellant to enter a plea of guilty to charges in which he felt forced to take.

Appellant's Brief at 4-5.

To the extent Clark argues the circuit court abused its discretion by "erroneously allow[ing] [him] to enter a plea of guilty," the circuit court properly declined to consider that claim because it does not relate to any alleged deficiency in counsel's performance. As for the remainder of his argument, Clark essentially contends that trial counsel was ineffective because, rather than negotiating a plea agreement, counsel should have accepted his claim of innocence, pursued an alternative-perpetrator defense, and advised him to proceed to trial. Specifically, Clark suggests that he could have been viewed as the victim because Jeffery Lay stabbed him between six and eight times. Additionally, Lay may have been the

-11-

perpetrator of Fulcher's injuries because Lay, unlike Clark, sustained injuries to his hands during the incident.

The circuit court properly rejected this argument. As it explained, Clark failed to identify any facts that would have supported a viable alternative-perpetrator defense or rendered it rational for him to reject the plea offer and proceed to trial. The mere fact that Lay stabbed Clark multiple times during the incident, or that Lay sustained injuries to his hands while Clark did not, does not reasonably support the conclusion that Lay assaulted Fulcher or that Clark was the victim rather than the aggressor. On the contrary, the evidence indicated that Clark unlawfully entered the victims' residence, attacked Fulcher, and was stabbed by Lay while Lay was defending himself and Fulcher. Under these circumstances, counsel's decision to negotiate a favorable plea agreement rather than pursue a speculative alternative-perpetrator theory was objectively reasonable. Likewise, Clark has failed to demonstrate that rejecting the plea offer and proceeding to trial would have been a rational course of action. *Stiger*, 381 S.W.3d at 237.

Next, Clark argues that trial counsel rendered ineffective assistance by failing to challenge whether the allegations against him supported the elements of second-degree assault. According to Clark, counsel "made no effort to remedy the injustice[.]" Appellant's Brief at 5. However, Clark did not raise this claim in the

-12-

circuit court, nor does he request palpable error review. Accordingly, we will not address it. *See Couch v. Commonwealth*, 686 S.W.3d 172, 182 (Ky. 2024).

Clark's final allegation regarding trial counsel's performance is a bare assertion that counsel abandoned him during critical stages of the criminal proceedings. The circuit court summarily rejected that claim, concluding that it was refuted by the record, which demonstrated that counsel negotiated a favorable plea agreement on Clark's behalf and actively represented him throughout the plea and sentencing proceedings. We agree. Clark's allegation is unsupported by the record and amounts to little more than a repackaging of the arguments discussed above.

Clark also contends that he received ineffective assistance from counsel appointed to represent him in post-conviction proceedings, including those relating to his RCr 11.42 motion and a motion to withdraw his *Alford* plea that he later voluntarily withdrew. We need not address the particulars of these arguments because they are unpreserved, Clark does not request palpable error review, and, in any event, they are not legally cognizable. There is no constitutional right to counsel in post-conviction proceedings and, therefore, no corresponding claim for ineffective assistance of post-conviction counsel. *Bowling*, 981 S.W.2d at 552; *Hollon v. Commonwealth*, 334 S.W.3d 431, 437 (Ky. 2010).

Finally, Clark argues the circuit court erred by denying his request for an evidentiary hearing. However, as discussed above, his RCr 11.42 motion consisted largely of conclusory allegations, speculation, and claims that were either refuted by the record or insufficient to warrant relief even if accepted as true. Accordingly, the circuit court did not err in denying the motion without an evidentiary hearing. *Smith*, 438 S.W.3d at 394.

## IV. CONCLUSION

For the reasons discussed above, we AFFIRM.


ALL CONCUR.


BRIEF FOR APPELLANT:

Terrell Tyrone Clark, *pro se*
Wheelwright, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky